**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| | : | |
| **SHALANA WILLIAMS,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | **NO. 10-5203** |
| **PATRICK R. DONAHOE,** *Postmaster* | : | |
| *General of the United States Postal* | : | |
| *Service,* | : | |
| **Defendant.** | : | |
| | : | |

**MEMORANDUM OPINION**

RUFE, J.                                                    March 23, 2012

        Plaintiff Shalana Williams has filed suit to redress Defendant's alleged violation of Title

VII of the Civil Rights Act of 1964.[1]  Before the Court is Defendant's Motion to Dismiss the

Amended Complaint.  For the reasons that follow, the Motion will be denied.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

        In 1999, Ms. Williams began working as a mailhandler at the United States Postal

Service's bulk mail center  ("BMC") in northeast Philadelphia.[2]  In 2002, she was promoted to

Acting Supervisor at the BMC, earning a higher wage than she had earned as a mailhandler.[3]

However, Ms. Williams alleges that in 2005, "her ascension within the Postal Service was

deliberately and cruelly halted."[4]  According to Ms. Williams, the Postal Service incorrectly

came to believe that Ms. Williams had assisted another Acting Supervisor in filing an Equal

---

[1]  42 U.S.C. §  2000 *et seq.*

[2]  Am. Compl. ¶ 8.

[3]  Am. Compl. ¶ 9.

[4]  Am. Compl. ¶ 10.

Employment Opportunity ("EEO") complaint; the Postal Service – "notorious for its retaliatory vengeance" – then "swiftly stripped [Ms. Williams] of her Acting Supervisor responsibilities, and demoted her to regular mailhandler."[5]  Ms. Williams's demotion meant a loss in earnings of more than $10,000 per year.[6]  Ms. Williams filed a Postal Service EEO complaint for retaliation, the outcome of which is not noted in the Amended Complaint.[7]

In January 2007, Ms. Williams alleges she was falsely accused of fabricating a witness statement and fired.[8]  After she filed another EEO complaint for retaliation, the Postal Service "brought [Ms. Williams] back to work."[9]  Upon returning to work, however, Ms. Williams realized her prospects for career advancement to Acting Supervisor were "over for good," and sought a new avenue of upward mobility through the Postal Service's Associate Supervisor Program ("ASP").[10]  In 2007, Ms. Williams completed the written exam required for admission to the ASP.[11]  On January 11, 2008, Ms. Williams was denied admission to the ASP because she did not pass the "Reasoning" portion of the test.[12]   Ms. Williams believes that the Postal Service's proffered explanation for the denial is pretextual, alleging that the Reasoning portion of

---

[5]  Am. Compl. ¶¶ 10-11.

[6]  Am. Compl. ¶ 14.

[7]  Am. Compl. ¶ 15.

[8]  Am. Compl. ¶ 18.

[9]  Id.

[10]  Am. Compl. ¶ 20.

[11]  Am. Compl. ¶¶ 20-21.

[12]  Am. Compl. ¶ 21; see also Def.'s Mot. to Dismiss, Ex. 1; Pl.'s Br. in Opp'n at 9.

the exam was the easiest portion of the exam, and she had passed it the previous time she took the test.[13]

On February 16, 2008, one month after being denied admittance to the ASP, Ms. Williams learned that another individual had been accepted into the ASP despite having failed to complete the last two pages of the Reasoning portion of the exam and to meet the ASP's attendance standard.[14]  The individual who was admitted to the ASP had not filed a previous EEO complaint for retaliation.[15]   On March 26, 2008, Ms. Williams was suspended for 14 days for cursing on the workroom floor; the 14-day suspension was later reduced to a seven-day, no time served, suspension during the grievance process.[16]

Ms. Williams initiated contact with an EEO counselor on March 10, 2008 based upon her denial of admission into the ASP.  She filed a formal Postal Service EEO complaint on June 23, 2008 based on both her denial of admission into the ASP and her suspension.  In filing her EEO complaint, Ms. Williams relied upon the February 16 date when she learned that another individual had gained admission to the ASP, as the date of the alleged discriminatory act.  After an investigation,[17] the Postal Service issued a final agency decision on August 30, 2010, denying Ms. Williams's claims of discrimination.  The decision did not address whether Ms. Williams timely initiated contact with an EEO counselor following the alleged discriminatory act but

---

[13]  Id.

[14]  Am. Compl. ¶ 22; see also Def.'s Mot. to Dismiss, Ex. 3 at 3; Pl.'s Br. in Opp'n at 8.

[15]  Id.

[16]  Am. Compl. ¶ 26.

[17]  Ms. Williams chose to waive her right to an administrative hearing.

decided the issues on their merits.  Ms. Williams timely filed the instant action on October 4, 2010, within ninety days of her receipt of notice of the agency decision.[18]

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 12(b)(6), dismissal of a complaint for failure to state a claim upon which relief can be granted is appropriate where a plaintiff's "plain statement" lacks enough substance to show that he is entitled to relief.[19]  In determining whether a motion to dismiss should be granted, the court must consider only those facts alleged in the complaint, accepting the allegations as true and drawing all logical inferences in favor of the non-moving party.[20]  Courts are not, however, bound to accept as true legal conclusions couched as factual allegations.[21]  Something more than a mere *possibility* of a claim must be alleged; rather plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."[22]  The complaint must set forth "direct or inferential allegations respecting all the material elements

---

[18] Ms. Williams initiated this lawsuit by filing an application to proceed *in forma pauperis* on October 4, 2010.  (Doc. No. 1.)  The Honorable John P. Fullam, to whom this case was originally assigned, denied the motion without prejudice.  (Doc. No. 2.)  On December 14, 2010, Ms. Williams filed her Complaint, *pro se*, and paid the filing fee.  (Doc. No. 3.)  Defendant filed a Motion to Dismiss the Complaint on February 22, 2010.  (Doc. No. 9.)  Ms. Williams submitted a letter request for appointment of counsel and for additional time to respond to the motion.  (Doc. No. 10.)  Judge Fullam denied her request to appoint counsel, but granted Ms. Williams an extension until May 13, 2011 to respond to the motion.  (Doc. No. 12.)  The case was thereafter reassigned from Judge Fullam to this Court.  (Doc. No. 12.)  On May 11, 2011, Ms. Williams's current counsel filed a notice of appearance and an unopposed motion for a two-week extension of time to file an amended complaint, which the Court granted the following day.  (Doc. Nos. 13, 14.)  Ms. Williams filed an Amended Complaint on May 27, 2011.  (Doc. Nos. 15, 16.)  After several extensions, Defendant filed the Motion to Dismiss before the Court on September 16, 2011.  (Doc. No. 25.)  On October 25, 2011, the Motion became ripe for disposition.  (Doc. Nos. 28-31.)

[19] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007).

[20] ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994); Fay v. Muhlenberg Coll., No. 07-4516, 2008 WL 205227, at *2 (E.D. Pa. Jan. 24, 2008).

[21] Twombly, 550 U.S. at 555, 564.

[22] Id. at 570.

necessary to sustain recovery under *some* viable legal theory."[23]  The court has no duty to "conjure up unpleaded facts that might turn a frivolous . . . action into a substantial one."[24]

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."[25]  However, a court may properly consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."[26]  Here, Defendant attaches several exhibits pertaining to the administrative background of this case; Ms. Williams concedes that the documents relating to the administrative proceedings are undisputedly authentic and does not oppose their consideration given that her claims are based, in part, on these documents.  The Court therefore considers the documents attached to the Motion to Dismiss to the extent they concern the administrative process and are undisputed.  The Court will not, however, consider those documents which do not concern this process and which are presented to contradict or expand upon the allegations contained in the Amended Complaint.

## III. Discussion

Ms. Williams brings her retaliation claim based on two alleged discriminatory acts: (1) denial of admission to the ASP; and (2) her 14-day suspension for cursing.  Defendant argues that the claim should be dismissed with respect to the first act because Ms. Williams failed to initiate contact with an EEO counselor within 45 days of the alleged discriminatory conduct.

---

[23]  Id. at 562 (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).

[24]  Id. (citing McGregor v. Industrial Excess Landfill, Inc., 856 F.2d 39, 42-43 (6th Cir. 1988)).

[25]  Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

[26]  Id.

Defendant argues that the claim should be dismissed with respect to the second act because the suspension does not constitute an adverse employment action sufficient to maintain a retaliation claim.[27]

**A.      The Timeliness Of Ms. Williams's Contact With An EEO Counselor With Respect To The Denial Of Admission To The ASP**

A federal employee seeking relief under Title VII must exhaust her administrative remedies prior to filing suit in federal court.[28]  The EEOC's regulatory provisions contain the administrative remedies an employee is required to exhaust.[29]  Pursuant to these regulations, "an employee must 'initiate contact with [an EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.'"[30]  "The 45 day period begins to run 'when the plaintiff knows or reasonably should know that the discriminatory act has occurred.'"[31]  Compliance with this 45-day contact requirement is mandatory, and failure to comply renders a complaint subject to dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).[32]

Here, Ms. Williams was notified of her rejection from the ASP on January 11, 2008, and initiated contact with an EEOC counselor on March 10, 2008.  Ms. Williams concedes that if the

---

[27]  Defendant concedes that Ms. Williams's initial contact with an EEO counselor was timely with respect to this second act.

[28]  42 U.S.C. § 2000e-16(c); Brown v. Gen. Serv. Admin., 425 U.S. 820, 832 (1976); Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997).

[29]  Robinson, 107 F.3d at 1021.

[30]  Smith v. Pallman, 420 F. App'x 208, 213 (3d Cir. 2011) (quoting 29 C.F.R. § 1614.105(a)(1)).

[31]  Id. (quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1386 (3d Cir. 1994)).

[32]  Robinson, 107 F.3d at 1022.

Court finds the January 11 date controlling as Defendant argues, the March 10 contact was untimely.[33]  However, Ms. Williams argues her claim is timely because the 45-day time period did not begin to run until February 16, 2008, when she learned that an unqualified applicant was accepted into the Program.

The record before the Court is insufficient to establish whether Ms. Williams's initial contact with an EEO counselor was timely as a matter of law.  As stated, the 45-day limitation period begins to run when "the plaintiff knows or reasonably should know that the discriminatory act has occurred."[34]  The focus of this inquiry is what Ms. Williams knew or should have known before she initiated contact with an EEO counselor.  While Defendant's exhibits establish the relevant dates and detail the administrative process *after* the March 10 contact, they do not establish when Ms. Williams knew the discriminatory act occurred.

Ms. Williams was denied admission to the ASP on January 11, 2008, but did not know at the time that this act was discriminatory.  It was not until February 16, 2008, when Ms. Williams learned that an unqualified applicant had been admitted to the Program, that Ms. Williams alleges she knew a discriminatory act had occurred.  Whether Ms. Williams should have known or actually knew a discriminatory act occurred before February 16, 2008, is an issue of fact that has yet to be established.  The Amended Complaint alleges Ms. Williams knew a discriminatory act occurred on February 16, 2008.  Thus, it is not apparent on the face of the Amended Complaint or from documents attached as exhibits to the Motion, that Ms. Williams's initial contact was untimely.  Consequently, the Court cannot at this stage of the proceedings determine

---

[33]  Pl.'s Resp. at 5.

[34]  Oshiver, 38 F.3d at 1386 (internal quotation omitted).

as a matter of law that Ms. Williams's failed to timely exhaust her administrative remedies.

Accordingly, Defendant's motion to dismiss the retaliation claim based on her denial of

admission into the ASP will be denied.[35]

**B.   Ms. Williams's Fourteen-Day Suspension As An Adverse Employment Action**

To establish a *prima facie* case of retaliation, Ms. Williams must allege (1) that she

engaged in a protected activity, (2) that Defendant took an adverse employment action following

this protected activity, and (3) that a causal link exists between the protected activity and the

adverse action.[36]   Here, Defendant argues that although the claim with respect to the suspension

is timely, Ms. Williams has failed to allege a *prima facie* case of retaliation.   According to

Defendant, the alleged materially adverse employment action—the 14-day suspension—was not

"materially adverse," given that it was reduced to a seven-day paid suspension and record of the

suspension was expunged from Ms. Williams's record.

"Adverse employment actions in the retaliation context are 'not limited to discriminatory

action that affect the terms and conditions of employment.'"[37]   An employment action is "materially

---

[35]   Ms. Williams argues that even if the Court finds she failed to initiate contact with an EEO counselor within 45 days of the alleged discriminatory action, the Court should allow her to proceed with her claim based on a finding either that Defendant waived its right to assert a failure-to-exhaust defense, or that she is entitled to equitable tolling.  Since the Court has found that the record before it is insufficient to establish whether the initial contact was timely, the Court need not address this argument.  However, the Court recognizes that the time limitations under Title VII are not jurisdictional and may be subject to waiver or equitable tolling.  Wilson v. MVM, Inc., 475 F.3d 166, 174 (3d Cir. 2007) (citing Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)).  As with Defendant's claim of failure to timely exhaust, whether waiver or equitable tolling applies depends on the resolution of factual issues which the Court will not resolve at this stage in the proceedings.

[36]   Swain v. City of Vineland, No. 11-2100, 2012 WL 75959, at *4 (3d Cir. Jan. 11, 2012).

[37]   McCullers v. Napolitano, 427 F. App'x 190, 195 (3d Cir. 2011) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006)).

adverse" if the action would dissuade a reasonable employee from engaging in protected conduct.[38] The purpose of this standard is to "screen out trivial conduct while effectively capturing those acts that are likely to dissuade employees from complaining or assisting in complaints about discrimination."[39]  However, "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience."[40]

While the Court recognizes that a suspension with pay that has been expunged from an employee's record is not a materially adverse employment action,[41] Ms. Williams does not allege that the suspension was expunged from her record, nor is it clear from the Amended Complaint that the suspension was paid.  Thus, Defendant's argument that the suspension here was not materially adverse is based on factual disputes concerning the nature of the suspension.  The Court cannot resolve these factual disputes without a fully developed record and will not dismiss the Amended Complaint based on these disputed facts.[42]

---

[38]  Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68.

[39]  Id. at 69-70.

[40]  Moore v. City of Philadelphia, 461 F.3d 331, 346 (3d Cir. 2006) (quoting Burlington N. & Santa Fe Ry. Co., 548 U.S. at 68).

[41]  Lewis v. Bell Atlantic/Verizon, 321 F. App'x 217, 221 (3d Cir. 2009) ("We agree with the District Court that Lewis's suspension in 1998 was not an adverse employment action, as he was reinstated with back pay and the incident was expunged from his record.").

[42]  As stated above, the Court considers only those undisputedly authentic documents upon which the allegations of the Complaint are based.  The Court does not consider those documents which contradict or elaborate on the allegations contained in the Amended Complaint where those documents are not undisputedly authentic. Here, the Court considers only those documents concerning the administrative process.  Despite Defendant's attempt to rely on documents to contradict the allegations contained in the Amended Complaint and although Defendant's contentions regarding the nature of the suspension at issue here may ultimately prove true, the Court will not, at this stage in the proceedings, dismiss the Amended Complaint based on these contentions.

**IV. CONCLUSION**

For the foregoing reasons, the Motion to Dismiss will be denied. An appropriate Order follows.